IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**DARIUS DENNIS**                                                                          **PLAINTIFF**

**VERSUS**                                        **CIVIL ACTION NO. 5:19-cv-72-DCB-MTP**

**J. JONES,** *et al.*                                                                    **DEFENDANTS**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court following an omnibus hearing held on July 8, 2020. At the omnibus hearing, the Court noted that Plaintiff submitted a Motion to be Free from Retaliation [40] on March 23, 2020, which the Court construed as a motion to amend to add a retaliation claim.[1] At the hearing, however, Plaintiff articulated that he continued to fear for his safety, that Defendants Walker, Middlebrooks, and Perkins continued to harass him, and he requested to be immediately moved to another prison. The Court now construes this testimony as an Ore Tenus Motion for a Temporary Restraining Order or a Preliminary Injunction [Docketed July 31, 2020].

Plaintiff claims that Defendants are trying to hurt him because he filed a lawsuit against them. Plaintiff testified that other inmates were paid by Defendants to injure him and that one inmate, Mike Drain, followed through on the plan to attack him and hit him over the head with a lock.

Plaintiff also testified that on February 3, 2020, Defendants Walker, Middlebrooks, and Perkins came into Plaintiff's cell, handcuffed him to his bed, beat him, and told him to drop his

---

[1] Plaintiff previously filed two motions for a temporary restraining order in November and December of 2019. *See* Mot. [14] and [23]. Both motions were denied. *See* Order [43].

1

lawsuit. Plaintiff also claims that they are continuing to harass him and are using dogs to search his cell. He is afraid to eat the food, out of fear of food poisoning, and is afraid to sleep.[2]

On June 16, 2020, Plaintiff's cell was searched, and all his paper and materials related to this lawsuit were confiscated. This was allegedly done in retaliation. Plaintiff also testified that Defendant Middlebrooks told him that he would die if he did not drop this lawsuit.

The Court directed Defendants to respond to Plaintiff's allegations that he is being retaliated against and his request to be transferred to another prison. *See* Order [53]. Defendants filed their Response [57] on July 28, 2020, and this matter is now ripe for consideration.

## ANALYSIS

An applicant for a temporary restraining order or a preliminary injunction must demonstrate each of the following:

(1) A substantial likelihood of success on the merits;

(2) A substantial threat that the movant will suffer irreparable injury if the temporary restraining order is denied;

(3) The threatened injury must outweigh any damage that the temporary restraining order will cause the non-movant; and

(4) The temporary restraining order will not disserve the public interest.

*Whole Woman's Health v. Paxton*, 264 F. Supp. 3d 813, 818 (W.D. Tex. 2017) (citing *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014)). "A temporary restraining order is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Id*.

---

[2] Plaintiff informed the Court that he was taken to the hospital on June 12, 2020 to be treated for food poisoning.

Plaintiff's request for injunctive relief at the omnibus hearing centered around alleged retaliation on the part of Defendants. "To establish retaliation, a prisoner must show '(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.'" *Joseph v. Dykes*, 368 F. App'x 511, 513 (5th Cir. 2013) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). Causation requires a showing that "but for the retaliatory motive the complained of incident [] would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (internal quotations and citation omitted). "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006).

Courts must be cautious with retaliation claims. "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in… penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (internal quotations and citation omitted). A prisoner's "personal belief that he was a victim of retaliation is not sufficient to support a retaliation claim." *Ybarra v. Meador*, 427 F. App'x 325, 326 (5th Cir. 2011).

***Retaliatory Acts***

<u>Mike Drain Incident</u>

Plaintiff testified that Defendants paid or gave things of value to inmate Mike Drain to injure him. Allegedly, on an unspecified date, Drain hit Plaintiff over the head with a lock, which seriously injured Plaintiff's head and required stitches. Defendants argue, however, that

there is no mention of this incident in Plaintiff's institutional or medical records, and Plaintiff never filed any administrative grievances regarding the event.

### February 3, 2020 Assault

Plaintiff alleged that on February 3, 2020, Defendants Walker, Middlebrooks, and Perkins came into his cell and beat him. Defendant Middlebrooks submitted an affidavit denying that any such event occurred or that he had ever used force against Plaintiff, other than the use of a chemical agent to stop an altercation on April 24, 2019. *See* Resp. [57], Ex. F at 1. Defendants also submit that there are no records of this incident in either Plaintiff's institutional records or medical records.

### Cell Searches

Plaintiff testified that Defendants also harass him by using dogs to search his cell and take his property, including legal materials. Defendants concede that cell searches occur, on a random and targeted basis, almost every day at WCCF to promote the safety of staff and inmates. They argue, however, that there is no evidence that Defendants ordered the taking of Plaintiff's personal property from his cell as an act of retaliation. If such an event did take place, Defendants also point out that Plaintiff has not filed any grievances relating to searches of his cell or the confiscation of personal property. *See* Resp. [57], Ex. E.

### Poisoned Food

Plaintiff further testified that he is afraid to eat the food at WCCF out of fear that it will be poisoned. He also stated that he was taken to the hospital on June 12, 2020 to be treated for food poisoning.

Defendants first submit that Plaintiff continues to eat the food he is served. When Plaintiff arrived at WCCF in July 2018 he weighed 161 pounds. *See* [59] at 159. Recently, on

June 27, 2020, Plaintiff weighed 175 pounds. *Id*. at 556. The medical records demonstrate that Plaintiff has gained weight since his transfer to WCCF.

Defendants also submit that Plaintiff's June 12, 2020 hospital visit was not related to food poisoning. Plaintiff was seen by the physician at WCCF on June 12 and complained of vomiting blood, feeling lightheaded and dizzy, and a rapid heartbeat. *Id*. at 550. The doctor noted that he could not rule out cardiac issues and directed Plaintiff be taken to the hospital for further evaluation. *Id*. Plaintiff returned from the hospital the same day and reported that he received a few shots and was instructed to follow up with a cardiologist. *Id*. at 446. Defendants argue that Plaintiff's medical records do not reflect a food poisoning issue or that Defendants caused Plaintiff to be ill.

### Sleep Issues

Plaintiff also testified that Defendants' harassment has prevented him from sleeping. Plaintiff's medical records show that he was taking a sleep aid before he came to WCCF. Med. R. [59] at 169. Plaintiff sought sleeping pills after he was transferred to WCCF and lied to the medical unit about his wife dying in an effort to obtain medication. *Id*. at 172-73. Defendants argue that nothing in his medical records reflects any recent complaints abouts sleeping issues or that any such issues were caused by Defendants.

### Threats from Warden Middlebrooks

Plaintiff also informed the Court that Defendant Middlebrooks threatened him right before his omnibus hearing on July 8, 2020, which was held by video conference. Defendant Middlebrooks submitted an affidavit refuting Plaintiff's claim and stating "I understand that Mr. Dennis testified at his omnibus hearing on the morning of July 8, 2020, that I made certain threats towards him just prior to him entering the video conference room for his hearing.

However, I was not at WCCF that morning and did not arrive at the facility that day until 2 p.m., well after Mr. Dennis' omnibus hearing had ended." Resp. [57], Ex. F. at 2.

*Temporary Restraining Order Analysis*

Plaintiff has not sufficiently established that Defendants intended to retaliate against him or that retaliatory actions even occurred. Plaintiff has not shown anything more than a personal belief that prison officials are retaliating against him for filing this lawsuit. A personal belief is not enough to support a retaliation claim. *Ybarra*, 427 F. App'x at 326. Even if Plaintiff had come forward with more evidence, this Court is required to view his claims of retaliation with skepticism. *Woods*, 60 F.3d at 1166.

Despite Plaintiff's many serious claims, there is no direct evidence of Defendants' motivations or a chronology of events from which retaliation may plausibly be inferred. *Id*; *see also Lockamy v. Rodriguez*, 402 F. App'x 950, 952 (5th Cir. 2010) (speculation is not sufficient to meet the heavy burden placed on prisoners to establish a retaliation claim). As Plaintiff has not made out a strong retaliation claim, he has not carried his burden to establish a substantial likelihood of success on the merits. The undersigned, therefore, recommends that Plaintiff's request for injunctive relief in relation to his retaliation claims be denied.

*Prison Transfer*

To the extent that Plaintiff is seeking immediate injunctive relief in the form of a transfer to another prison, such relief is not appropriate at this time. While Plaintiff claims to be afraid, none of the inmates Plaintiff has red-tagged[3] are housed at WCCF. *See* Resp. [57]. Ex. J "Keep Separates." Additionally, in January 2020, Plaintiff was offered the opportunity to red-tag other inmates, but he refused. Resp. [57], Ex. G at 6.

---

[3] A "red-tag" is an administrative request to be kept separate from another inmate.

Plaintiff is not entitled to a transfer to another prison. "[A] prisoner has no right of any kind springing from the Constitution itself to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another." *Oglesby v. Gusman*, 2009 WL 3254145, at *3 (E.D. La. Oct. 7, 2009) (citing *Olim v. Wakinekona*, 461 U.S 238, 245-46 (1983)). Moreover, "it is well settled that prison officials are given wide latitude in the day-to-day operations of the prison system, and the courts are reluctant to interfere unless presented with substantial evidence of patently unreasonable conduct." *Barrett v. Epps,* 2008 WL 1827449, at *5 (S.D. Miss. Apr. 22, 2008). Therefore, injunctive relief in the form of a transfer is not appropriate or necessary.

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends that Plaintiff's Ore Tenus Motion for Temporary Restraining Order or a Preliminary Injunction [Docketed July 31, 2020] be DENIED.

## RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party. The district judge at the time may accept, reject, or modify in whole or in part, the recommendations of the magistrate judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the proposed factual findings and legal

8

conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F. 3d 1415, 1428-29 (5th Cir. 1996).

    THIS the 31st day of July, 2020.

                                                s/ Michael T. Parker
                                                United States Magistrate Judge